**In the Matter of Ronald Dee GOUKER, Debra Sue Gouker, Debtors.**

**Bankruptcy No. 89–01735–W J.**

United States Bankruptcy Court,
S.D. Iowa.

May 29, 1990.

Richard D. Crowl, Jr., Council Bluffs, Iowa, for debtors.

C.R. Hannan, Council Bluffs, Iowa, Trustee.

## MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Chief Judge.

On November 14, 1989 a telephonic hearing was held on the Chapter 7 trustee's objection to Ronald Gouker's claim of exemption in a retirement account and on his application for turnover of that property. C. R. Hannan, the trustee, represented himself. Richard D. Crowl, Jr. appeared on behalf of the debtors. At the conclusion of the hearing, the court directed the parties to file briefs on all issues for which the facts were undisputed. The matter was considered fully submitted on December 6, 1989 when the last brief was filed.

### STATEMENT OF THE FACTS

1. On August 8, 1989 the debtors filed a petition for relief under Chapter 7. They resided in Iowa for more than 180 days immediately preceding that date.

2. On Schedule B–4 as amended, Ronald Gouker claimed his interest in a "retirement account with Nebraska Public Employees Retirement System—estimated value of account $8,579.26" exempt pursuant to Iowa Code section 627.6(8)(e).[1]

3. On September 28, 1989 the trustee filed his objection to the exemption claim.

---

**1.** Although the debtors actually cited Iowa Code section 627.8, that reference appears to be in error because that provision applies only to United States government plans.

On the same day the trustee filed an application against the debtors for turnover of the funds.

4. On October 18, 1989 the debtors filed a resistance to the trustee's application for turnover. They initially argued that the property in issue was not property of the estate by virtue of Nebraska Code section 84–1324 which states that the Nebraska Public Employees Retirement System is not subject to garnishment, levy, the operation of bankruptcy or insolvency law or any other process of law. The debtors subsequently clarified that their arguments were based on the state law pertaining to the Nebraska School Employees Retirement System (NSERS).

5. Ronald Gouker has been employed by the Bellevue Public Schools for ten years. As a result of that employment, he has participated in NSERS.

6. NSERS is governed by Nebraska Code Sections 79–1501 through 79–1566. With exceptions not relevant here, NSERS employees are required to contribute a set percentage of wages to the system. NSERS employers make matching contributions. Those contributions are not credited to individual accounts.

7. If an NSERS employee is terminated from employment prior to retirement, that employee is entitled to receive his or her accumulated contributions plus interest. Death benefits are paid if the employee dies prior to retirement. When an employee retires on account of age or disability, retirement benefits commence.

8. Nebraska Code Section 79–1552 provides that:

> The right of a person to an annuity, an allowance, or any optional benefit under sections 79–1501 to 79–1566, any other right accrued or accruing to any person or persons under such sections, the various funds and accounts created thereby, and all the money, investments, and income thereof shall be exempt from any

state, county, municipal, or other local tax and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or any other process of law whatsoever and shall not be assignable except to the extent that such annuity, allowance, or benefit is subject to a qualified domestic relations order as such term is defined in section 414(p) of the Internal Revenue Code.

9. Ronald Gouker had not terminated his employment and was not eligible for retirement at the time the petition was filed.

### STATEMENT OF THE ISSUES

1. Is the debtors' interest in the pension plan property of the estate as contemplated by 11 U.S.C. section 541(a)(1) or is it otherwise excluded by operation of 11 U.S.C. section 541(c)(2)?

2. If the debtors' interest is not excluded from the property of the estate, is it exempt from the estate pursuant to 11 U.S.C. section 522(b)(2)(A)?

   a. Is the debtors' interest exempt under Federal law other than 11 U.S.C. section 522(d)?

   b. Is the debtors' interest exempt under the State or local law of the debtors' domicile that is applicable on the date of filing?

     (1) Is the State or local law under which the plan is created and exempted in its entirety preempted by ERISA section 514(a)?

     (2) Is the State law which provides for general personal exemptions preempted by ERISA section 514(a)?

     (a) If the State law is not preempted, have the debtors established that their rights in a payment under the plan are reasonably necessary for their support or that of any of their dependents as required by Iowa Code section 627.6(8)(e)? [2]

---

**2.** The trustee also argues that Ronald Gouker can not claim an exemption under Iowa's general exemption statute because the statutorily created retirement system is not a plan or contract that is similar to the type of pension or annuity contemplated by the Iowa legislature when enacting Iowa Code section 627.6(9)(e) (now section 627.6(8)(e)). The court does not find the trustee's argument persuasive. The general reasoning set forth by former Bankruptcy Judge

3. If the debtors' interest in the plan is not exempt from the estate, what can the trustee recover for the benefit of the general unsecured creditors?

## DISCUSSION

### I. GENERAL OBSERVATIONS

Prior to late 1989 this court heard relatively few objections to retirement fund exemptions. Most that were filed focused not on whether the property should have been excluded from the estate pursuant to section 11 U.S.C. section 541(c)(2)[3] but on whether the property was reasonably necessary for the support of the debtor or a dependent of the debtor and, therefore, exempt from the estate by operation of Iowa Code section 627.6(8)(e).

Then *In re Swanson*, 873 F.2d 1121 (8th Cir.1989), was filed. In that decision, the Eighth Circuit Court of Appeals held that the debtors' interest in a Teachers Retirement Fund created by the State of Minnesota was property of the estate even though some characteristics of a spendthrift trust were present. Similar to the interests of the debtors in three of the four cases filed today,[4] the debtors in *Swanson* made mandatory contributions to the fund and could reach those contributions plus accumulated interest upon termination of employment. After generally observing that Minnesota spendthrift trust law was less than specific, the appellate court determined that the contributions (even though involuntary) and the potential control over the fund (even though terminating employment technically was necessary) outweighed both the fact that the fund could not be assigned and the fact that the creditors could not levy against it. *Id.* at 1123–24.

After the *Swanson* decision was published, some of the Chapter 7 trustees for this district began filing more objections to retirement plan exemptions and to both employer and employee contributions.[5] Debtors and, in one case, counsel for a public retirement system have responded by urging this court to distinguish *Swanson* and *In re Graham*, 726 F.2d 1268 (8th Cir.1984) and to find that the plans in issue actually constitute spendthrift trusts under state law and, accordingly, that the debtors' interests in those plans are excluded from the estates. In *Graham* the appellate decision, the debtor made voluntary contributions to an ERISA qualified plan even after leaving his employment with the public university employer. The determination that the property in issue was not a spendthrift trust appears to be based on a general reading of circuit case law and, at best, upon an implicit analysis of the facts under Iowa spendthrift trust law; however, the court would have reached the same conclusion if the applicable nonbankruptcy law had been properly reviewed and discussed in the decision.

---

Richard Stageman in *Matter of Pettit*, 55 B.R. 394, 397–98 (Bankr.S.D.Iowa 1985) in support of his conclusion that a profit-sharing plan was a similar plan or contract is equally valid with respect to the statutorily created plan in this case. *See also In re Hutton*, 893 F.2d 1010 (8th Cir.1990) (savings and investment plan provided by employer was "similar plan").

**3.** This court is aware of only two decisions in which it discussed whether a particular trust arrangement was self-settled and, therefore, not excluded from the bankruptcy estate. Neither decision was submitted for formal publication but both are contained in the court's official decision books maintained at the three court locations in this district. In the decision cited by the trustee in support of his argument, the debtor had agreed to release all claims against certain defendants in a civil action in exchange for a sum of money that then was transferred by the defendants' insurer to a bank that acted as a trustee of the trust fund for the benefit of the debtor and her son. Since the debtor gave consideration for the creation of a trust of which she was a beneficiary, the trust was held to be self-settled. That conclusion clearly rested on the specific facts of the case. In the other

**4.** The companion cases decided today include *Matter of Carver*, 116 B.R. 985 (Bankr.S.D.Iowa 1990), *Matter of Bartlett*, 116 B.R. 1015 (Bankr. S.D.Iowa 1990), *Matter of Layton*, 116 B.R. 995 (Bankr.S.D.Iowa 1990).

**5.** Although the statement of the issue set forth in the appellate court decision indicates that both the employer and the employee contributions were the object of the trustee's turnover action, the district court's published opinion stated that only the employee contributions were in issue. *Compare In re Swanson*, 873 F.2d 1121, 1122 (8th Cir.1989) *with Matter of Swanson*, 79 B.R. 422, 423 (D.Minn.1987). The bankruptcy court's decision was not published.

court affirmed the determination by the bankruptcy court for the Northern District of Iowa that the debtor was required to turn over his ERISA trust funds to the bankruptcy trustee.

Certainly, this bankruptcy court must follow the controlling case law of the Eighth Circuit Court of Appeals. Mindful that appellate courts generally avoid determining more than the facts and the applicable law in a particular case warrant, this court concludes that the general holdings in the *Swanson* and the *Graham* decisions must be applied in a manner that is consistent with and limited to the specific facts of those cases. Indeed, to do otherwise would work inequities in the four cases under consideration.

Hence, this court will avail itself of what might be deemed by some to be a convenient point of distinction with respect to the *Swanson* decision. That is, the *Swanson* opinion reviews the exclusion issue under Minnesota spendthrift trust law. By contrast, this court must analyze facts somewhat similar to those in *Swanson* under Iowa law in two of the cases and under Nebraska law in the other two cases. *In re Graham*, 24 B.R. 305, 310 n. 4 (Bankr.N.D.Iowa 1982). *See also Swanson*, 873 F.2d at 1124 ("Nevertheless, we do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under section 541(c)(2)."). The point of distinction will be one that yields a difference.

Then, it must be remembered that the *Graham* conclusions that only a "traditional" spendthrift trust can be *excluded* from the property of the estate and that a pension plan may only be *exempted* from the estate flowed from findings that the debtor

was the sole stockholder, director and officer of the corporation, which contributed approximately $150,000.00 to his fully vested pension plan, and that he had resigned on the date the petition in bankruptcy was filed. That latter fact meant that the debtor could reach the funds under the terms of the plan. In turn, that meant the bankruptcy trustee could recover the funds unless the court held that the spendthrift provisions of the pension plan excluded the debtor's beneficial interest from the estate [6] or that the debtor could exempt that interest from the estate.[7]

At this juncture, the court observes that its resolution of the exclusion issue will dispose of three of the four cases under consideration. If the court were to construe Iowa spendthrift trust law as being less than specific and to assess the facts in a manner consistent with the way in which the *Swanson* court interpreted the facts under Minnesota law, none of the cases would be so resolved. Nevertheless, this court also will address, in the alternative, the remaining issues in an effort to emphasize the structural integrity of the Code vis-a-vis other federal and state law.

## II. PROPERTY EXCLUDABLE FROM THE BANKRUPTCY ESTATE

■ The first question that must be addressed in all of the cases under consideration is whether the debtors' interest in the retirement fund in issue remains property of the estate or is excluded from the estate. 11 U.S.C. section 541(a)(1) provides that the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" except as provided in subsequent subsections. Even exempt property is included initially in the

---

**6.** The appellate opinion addresses only issues of law with respect to the exclusion provision in the Bankruptcy Code. Apparently on appeal the parties did not challenge the bankruptcy court's findings of fact and conclusion of law that the debtor's pension plan was not a spendthrift trust under Iowa law. *Compare In re Graham*, 726 F.2d 1268, 1270–71 *with In re Graham*, 24 B.R. 305, 310–11 (Bankr.N.D.Iowa 1982).

**7.** Both the appellate court and the bankruptcy court address only an issue of law with respect

to the exemption provisions in the Bankruptcy Code. *Graham*, 726 F.2d at 1273–74 and *Graham*, 24 B.R. at 311–12. It should be noted that the debtor in the *Graham* case filed his petition on April 24, 1981. Iowa Code section 627.6, which enumerates the personal exemptions an Iowa resident may claim, did not allow any exemption for an interest in a retirement fund until July 1, 1981. Acts 1981 (69 G.A.) ch. 182, § 3.

estate. *In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984).

11 U.S.C. section 541(c)(1)(A) generally invalidates any restrictions on assignment or alienation of a debtor's interest in property. It applies to anti-alienation clauses required by the Employee Retirement Income Security Act of 1974 (ERISA). *Id.* at 1273. Then section 541(c)(1)(A) is modified by 11 U.S.C. section 541(c)(2) which states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." That qualification recognizes that the bankruptcy trustee would not be able to defeat a restriction on the transfer of a beneficial interest to the extent the restriction would be enforceable under state law as of the petition date. Only to the extent there would be no restriction would the beneficial interest be property of the estate and, if not exempt, subject to turnover. *Cf. In re Schauer*, 835 F.2d 1222, 1225 (8th Cir.1987) (reviewing a number of case authorities supporting "the general principle that the trustee takes only those rights that the debtor had under state law".)

The court must analyze the spendthrift provisions under Nebraska law because NSERS is governed by the Nebraska Code. *See In re Montgomery*, 104 B.R. 112, 115 (Bankr.N.D.Iowa 1989) (New York law governed plan of Iowa debtor). Nebraska law generally recognizes and upholds the validity of spendthrift trusts. *Matter of Leimer*, 54 B.R. 587, 590 (D.C.Neb.1985) (finding that neither the trust assets nor the debtor's beneficial interest in those assets were property of the estate and, accordingly, reversing the bankruptcy court's denial of relief from the automatic stay that was based on the trust being property of the estate.) In *First National Bank of Omaha v. First Cadco Corp.*, 189 Neb. 734, 205 N.W.2d 115 (1973), the Nebraska Supreme Court reviewed a situation in which the trust period had expired and the beneficiary had a present right to demand the

trust corpus. In concluding that the beneficiary's failure to demand the distribution did not make the garnishment ineffective, the court pointed out that "[i]t is uniformly held to be against public policy to permit a person to tie up his own property in such a way that he can still enjoy it but can prevent his creditors from reaching it." *Id.* 205 N.W.2d at 118 (citing II Scott on Trusts (3d Ed.1967), § 156, p. 1192). Certainly, under the *Leimer* and *First National* cases, a finding of fact that the debtor was the sole settlor and the sole beneficiary with an immediate right to access the plan or a portion of the plan would support a conclusion of law that the debtor's beneficial interest was not excludable from the estate by the mere presence of spendthrift provisions in the retirement plan.

In this case, Ronald Gouker is not the sole settlor and the sole beneficiary with respect to NSERS. His interest in a retirement account under NSERS is not the result of his voluntary action.[8] As of the petition date, he had no right to demand any distribution of his interest in the plan. His mandatory contributions are of benefit to other NSERS employees. That is, as contemplated by Nebraska Code sections 79–1545 through 79–1549, the mandatory contributions made by the NSERS employees and matched by the NSERS employers form a pool of monies in several accounts which the State Investment Council may manage and invest for the benefit of all participants. The restrictions found in Nebraska Code section 79–1552 are designed to protect the integrity of the statutorily created retirement system. The fact that the plan's spendthrift provisions make a limited exception for domestic relations orders, as required by federal law, does not defeat the plan's status as a spendthrift trust under Nebraska law. *See Summers v. Summers*, 177 Neb. 365, 128 N.W.2d 829, 833 (1964) (suggesting that general rejection of *Restatement (Second) of Trusts § 157* would not prohibit invasion of the trust by certain creditors if the settlor

---

**8.** Any argument equating the mere seeking and maintaining of employment similar to that in this case with creating or giving consideration to a trust is strained at best. The trustee's reliance on the first case discussed in footnote 3 is misplaced.

provided for it in the trust instrument). *But see Swanson,* 79 B.R. at 425 (the fact that the trust was not immune from child support or alimony orders was held to be inconsistent with Minnesota spendthrift trust law).

Based on this statutory scheme, this court concludes that NSERS constitutes a spendthrift trust under Nebraska law. It may not be a "traditional" spendthrift trust if the adjective refers only to stereotypes, such as the familiar family trust or an arrangement involving no overlapping of settlors and beneficiaries.[9] Yet, it certainly should be deemed a traditional spendthrift trust in theory and in practice because the state, as the ultimate settlor, has mandated a system for the general welfare of the state's school employees as a whole and has attempted to protect that retirement system from adverse action by beneficiaries and by creditors of the beneficiaries. To say the least, it certainly is not a traditional *non* spendthrift trust. To hold otherwise would "defeat the legitimate expectations of the settlor of the trust". *Graham,* 726 F.2d at 1272 (quoting from H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 6136). *See generally In re Colsden,* 105 B.R. 500, 501–02 (N.D. Iowa 1988) (observing that the Eighth Circuit *Graham* decision did not analyze whether the profit-sharing plan under consideration was a spendthrift trust under state law and implying that a functional analysis might miss a distinction between a genuinely excludable spendthrift trust arrangement and a nonexcludable generic self-settled and revocable plan).[10]

## III. PROPERTY EXEMPT FROM THE ESTATE—THE ALTERNATIVE ANALYSIS

Had this court concluded that the property in issue was not excluded from the bankruptcy estate, it would have been required to address whether Ronald Gouker could exempt that property from the estate. As explained earlier, the court will provide the alternative analysis.

The discussion begins with a review of 11 U.S.C. section 522(b) which provides in relevant part:

> Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition ...

As permitted by section 522(b)(1), Iowa opted out of the federal exemptions set forth in 11 U.S.C. section 522(d) by operation of Iowa Code section 627.10.[11] Like the debtors in the other cases decided today, Ron-

---

**9.** The court has been unable to find the specific term "traditional" used in conjunction with references to spendthrift trusts in the legislative history of section 541(c)(2).

**10.** The lower courts in the Eighth Circuit have analyzed the exclusion issue in various ways. *In re Boon,* 108 B.R. 697, 702–03 (W.D.Mo.1989). In the *Boon* decision, the district court held that the profit-sharing plan in issue was a spendthrift trust and, accordingly, reversed the bankruptcy court's order directing the debtors to turn over their interest in the plan to the bankruptcy trustee. The district court engaged in an exhaustive review of the relevant case law that has developed since the *Graham* decision was

rendered and concluded that "the most narrow, and safest, reading of the Eighth Circuit's opinion in *Graham* is that ERISA pension plans may not be excluded under section 541(c)(2) merely because they are ERISA pension plans" and "ERISA plans may be excluded from the bankruptcy estate under section 541(c)(2) if, and only if, they qualify as an enforceable spendthrift trust under applicable state law". *Id.* at 702 and 706.

**11.** Iowa Code section 627.10 states:

> A debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the

ald Gouker resided in Iowa for more than 180 days immediately preceding the petition date. Accordingly, he may exempt the property in issue to the extent permitted, if at all, under Federal law other than section 11 U.S.C. section 522(d) or under Iowa or local law.

With respect to the exemption options under Federal law, the Eighth Circuit Court of Appeals made it very clear that any prohibition on assignment or alienation pursuant to 29 U.S.C. section 1056(d) (ERISA) or 26 U.S.C. section 401(a) (IRS) did not constitute a federal exemption under section 522(b)(2)(A). *Graham*, 726 F.2d at 1273–74. Then in *Swanson*, the appellate court made the following observations:

> The debtors elected the federal exemptions which do not exempt retirement funds such as those involved in this case. The debtors' decisions seem to have been motivated by a belief that the retirement funds at issue would be excluded from their bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). In any event, it is clear that had the debtors selected the exemptions provided under Minnesota law the retirement funds in this case would have been exempt.

*Swanson*, 873 F.2d at 1122.

It must be remembered that the debtors in *Swanson* were free to choose either the section 522(d) exemptions pursuant to section 522(b)(1) or the section 522(b)(2)(A) federal exemptions (in addition to state and local exemptions) pursuant to section 522(b)(2) because Minnesota did not opt out of the federal exemption scheme. As the quote indicates, the debtors chose the first option, meaning they could not then claim the section 522(b)(2)(A) federal exemptions. Hence, the first sentence in the above quote does not appear to be relying upon the *Graham* holding that certain plans can not be exempted under section 522(b)(2)(A) but rather seems to be based on unstated findings that the plan in issue does not satisfy the requirements of section 522(d)(10)(E).[12] Additionally, since the *Graham* decision previously found that ERISA regulated private employer plans and that, like non-ERISA plans,[13] such plans could be exempt under section 522(d)(10)(E), it is reasonable to assume that the Eighth Circuit also concluded that the plan in *Swanson* was not an ERISA qualified plan. *Graham*, 726 F.2d at 1272 and 1274. A determination that the Minnesota Teachers Retirement Fund is not an ERISA qualified plan appears in any event to be consistent with the statutory framework of ERISA.[14]

◼ Returning to the facts of this case, Ronald Gouker can not exempt the NSERS

property that is specified in 11 U.S.C. sec. 522(d) (1979). This section is enacted for the purpose set forth in 11 U.S.C. sec. 522(b)(1) (1979).

Acts 1981 (69 G.A.) ch. 182, § 2.

12. 11 U.S.C. section 522(d)(10)(E) provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . . . .

(10) The debtor's right to receive—

. . . . .

(E) A payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

13. It might be argued that the Eighth Circuit Court of Appeals determined that a statutory retirement system is not a "similar plan or contract" under the federal exemption; however, such a conclusion appears to be at odds with its subsequent observation that "if § 541(c)(2) were construed to exclude retirement funds from the bankruptcy estate then the part of the Code which provides a limited federal exemption for these funds would be rendered meaningless". *Swanson*, 873 F.2d at 1124. *See supra* note 1 (the trustee did not rely upon the *Swanson* language).

14. The controlling ERISA provisions state in part:

"Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section

retirement account under a section 522(b)(2)(A) federal exemption. NSERS is a creature of state law and, as such, is not similar to any of the property interests set forth in the legislative history of section 522(b)(2)(A). *See Graham*, 726 F.2d at 1274 ("The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government."). Since Iowa has opted out of the federal exemption scheme, the debtor can not utilize section 522(d)(10)(E).

■ Accordingly, the court must now determine whether the retirement account in this case is exempt under Iowa law. Unlike *Matter of Carver*, 116 B.R. 985, 992–95 (Bankr.S.D.Iowa 1990), there is no specific exemption upon which the court may rely. The court may not utilize the applicable nonbankruptcy law governing the statutory retirement system to determine the exemption issue in this case because that law is not the law applicable "at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition". 11 U.S.C. § 522(b)(2)(A).

Hence, the analysis in this case is limited to a review of Iowa Code Chapter 627, which is a general exemptions statute. As in *Matter of Bartlett*, 116 B.R. 1015, 1022–23 (Bankr.S.D.Iowa 1990) and *Matter of Layton*, 116 B.R. 995, 1003–04 (Bankr.S.D. Iowa 1990), the court must determine whether ERISA section 514(a), as codified at 29 U.S.C. section 1144(a),[15] preempts Iowa Code section 627.6(8)(e) which provides:

A debtor who is a resident of this state may hold exempt from execution the following property:

. . . . .

8. The debtor's rights in:

. . . . .

e. A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

■ ERISA section 514(a) preempts any and all state laws that make reference to ERISA plans even when those state laws are consistent with the federal statutory scheme. *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). (Georgia statute which provided treatment for ERISA employee welfare benefit plans that was different from that provided for non-ERISA plans was preempted by ERISA). *Cf. Baxter By And Through Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989) (ERISA preempted any state statute or common law which restricts a plan's right of subrogation); *Davis v. Ottumwa YMCA*, 438 N.W.2d 10, 12–13 (Iowa 1989) (ERISA preempted claims based on state statutes that related to an employee benefit plan and did not fall within any of the preemption exceptions). *See also Bricker v. Maytag Co.*, 450 N.W.2d 839, 841–42 (Iowa 1990) (ERISA did not preempt indirect action by former employees against former employer).

Many district and bankruptcy court decisions regarding exemption issues pertaining to retirement plans discuss the *Mackey* decision. At this point in time the majority appear to hold that ERISA section 514(a)

1003(a) of this title and not exempt under section 1003(b) of this title."
29 U.S.C. § 1144(a).
"The provisions of this title shall not apply to any employee benefit plan if—
(1) such plan is a governmental plan as defined in section 1002(32) of this title . . ."
29 U.S.C. § 1003(b).
"The term 'governmental plan' means a plan established or maintained for its employees

by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing . . ."
29 U.S.C. § 1002(32).

**15.** See first statutory provision quoted *supra* note 14.

preempts both specific exemptions in state laws creating and governing plans and also personal exemptions in general exemption statutes. *See In re Conroy,* 110 B.R. 492 (Bankr.D.Mont.1990) (finding opt-out state's general exemption statute preempted as to ERISA plans and citing numerous cases finding both specific and general state exemption statutes preempted). *See also In re Gaines,* 106 B.R. 1008 (Bankr.W. D.Mo.1989) (opt-out state's general exemption statute preempted to the extent that it relates to ERISA); *In re Bryant,* 106 B.R. 727 (Bankr.M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Sheppard,* 106 B.R. 724 (Bankr. M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Weeks,* 106 B.R. 257 (Bankr.E.D.Okla.1989) (opt-out state's general exemption statute referring to ERISA plans only was preempted); and *In re Flindall,* 105 B.R. 32 (Bankr.D.Ariz.1989) (opt-out state's general exemption statute allowing ERISA plan exemption was preempted). *But see, In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex. 1989) (state exemption statute was not preempted as it was not "related to" ERISA within the meaning of 29 U.S.C. section 1144(a)); *In re Bryan,* 106 B.R. 749 (Bankr.S.D.Fla.1989) (state exemption statute not preempted, adopting *Volpe* analysis); *In re Martinez,* 107 B.R. 378 (Bankr. S.D.Fla.1989) (opt-out state's exemption clause allowing exemption of ERISA plans was not preempted as it was not in conflict with federal law); and *In re Seilkop,* 107

B.R. 776 (Bankr.S.D.Fla.1989) (opt-out state's exemption statute not preempted, adopting *Martinez* analysis).

■ Although this court seriously questions whether ERISA section 514(a) or the *Mackey* decision mandates a conclusion that a general exemption statute's reference to ERISA plans in an opt-out state results in the preemption of the state provision,[16] the resolution of the preemption issue raised by the trustee does not require a lengthy analysis. That is, Iowa Code section 627.6(8)(e) is generic on its face. It can not be construed as making any reference to ERISA or to attendant IRS provisions. Thus, it is not preempted by ERISA section 514(a).

Accordingly, the next step in this alternative analysis would be to determine the extent to which Ronald Gouker's interest in the plan is reasonably necessary for his support or that of any of his dependents. The record before the court is not sufficient to determine the factual issue. If the court were proceeding under the alternative analysis, an evidentiary hearing would be necessary at this point.

Assuming Ronald Gouker would not be entitled to exempt some or all of his interest in the plan under section 627.6(8)(e), the trustee then would step into the figurative shoes of Ronald Gouker to pursue the property in issue. He would be required to file a complaint against the plan administrators seeking a turnover of the property pursuant to 11 U.S.C. section 542 and Bankrupt-

16. The very language of ERISA section 514(a) focuses on "state laws insofar as they may now or hereafter relate to any employee benefit *plan*". 29 U.S.C. section 1144(a) (emphasis added). Most general exemption statutes are not intended to impact on any plan but only on an individual's interest in a plan as of the petition date.

11 U.S.C. section 522(d)(10)(E) permits a debtor to exempt a right to receive a payment under a pension plan to the extent it is reasonably necessary for support. 11 U.S.C. section 522(b) sanctions state exemption systems. At a minimum, a state exemption that does not go beyond the bounds of the federal provision should be reconciled with the Congressional policy un-

derlying ERISA section 514(a) and allowed to remain in full force and effect as is the federal exemption. To do otherwise penalizes debtors in opt-out states even when the state exemption language mirrors the federal provision. "The question of whether state law is preempted by federal law is one of Congressional intent. The purpose of Congress is the ultimate touchstone [sic].'". *In re Laxson,* 102 B.R. 85, 87 (Bankr.N. D.Tex.1989) (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985)). *See generally Carver,* 116 B.R. at 993 n. 16 (discussing the interaction between codified federal law and statutory state law on the somewhat less than level playing field established by the United States Constitution).

cy Rule 7001(1). Assuming that Ronald Gouker did not become disabled or die or terminate his employment with the Bellevue Public Schools in the near future, he would have a long wait.[17] *Cf. In re Schauer*, 835 F.2d 1222, 1227 (8th Cir.1987) (recognizing that certain action taken by trustee based upon the rights a debtor has may result in considerable delay in the administration of the estate and in the closing of the case). The ultimate merits of pursuing this action are dubious at best—especially if it is remembered that a debtor may find it necessary to seek bankruptcy relief as a result of new debt in the long interim.[18]

## CONCLUSION

WHEREFORE, based on the foregoing analysis of the facts and the law, the court finds that NSERS constitutes a spendthrift trust under Nebraska law and, accordingly, concludes that Ronald Gouker's interest in NSERS is excluded from the bankruptcy estate by operation of 11 U.S.C. section 541(c)(2).

17. Ironically, if Ronald Gouker died or became disabled, his dependents in the first instance and he in the second situation would more likely than not need the funds for support. If he terminated his employment with the City, it is possible that he might then need some or all of the funds for his support. Yet, the "reasonably necessary for support" test is assessed as of the petition date. Parenthetically, it should be noted that converting the Chapter 7 case to another chapter case would not change the determinative date. *See* 11 U.S.C. section 348(a) (conversion does not effect change in date of filing petition). *Cf. Matter of Brownlee*, 93 B.R. 662, 664–65 (Bankr.S.D.Iowa 1988) (discussing treatment of exemption date issues by the Eighth Circuit Court of Appeals in the context of Chapter 13 cases being converted to Chapter 7 cases).

Moreover, requiring the trustee to wait years to complete the administration of the estate would seem to be at odds with 11 U.S.C. section 554(a), which provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate". Consideration of both the expense and inconvenience associated with the administration of the estate and also the discounted value of the funds at the time they would be turned over to the trustee probably would justi-

## ORDER

WHEREFORE, the trustee's objection to exemption is overruled and his motion for turnover is denied.

fy an order granting abandonment—even over the unlikely objection of a general creditor who would be willing to keep its own records open for years pending a distribution by the trustee.

18. The only statutory limitations are those found in 11 U.S.C. section 109 which defines who may be a debtor under the various chapters. 11 U.S.C. section 727(a)(8) prohibits a Chapter 7 debtor receiving another discharge in a Chapter 7 case if less than six years has transpired between petition dates. It does not prohibit filing a Chapter 7 petition before six years have elapsed.

Although some courts have held that there is a general prohibition against a debtor maintaining two chapter cases at the same time, the underlying rationale usually is that the two cases would entail the same debtor and the same debts. *See, eg., In re Wead*, 38 B.R. 658, 659 (Bankr.E.D.Mo.1984) (citing *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) and *Prudential Ins. Co. of America v. Colony Square*, 29 B.R. 432, 436 (W.D.Penn. 1983)). *But see, eg., In re Saylors*, 869 F.2d 1434 (11th Cir.1989) (debtor was not prohibited from filing Chapter 13 petition to cure arrearages on mortgage debt that had been discharged in Chapter 7 case even though the Chapter 7 case was open pending the filing of the final report).