### In the Matter of Richard E. BARTLETT, Rita A. Bartlett, Debtors.

### Bankruptcy No. 89–01841–C J.

United States Bankruptcy Court, S.D. Iowa.

May 29, 1990.

fy an order granting abandonment—even over the unlikely objection of a general creditor who would be willing to keep its own records open for years pending a distribution by the trustee.

18. The only statutory limitations are those found in 11 U.S.C. section 109 which defines who may be a debtor under the various chapters. 11 U.S.C. section 727(a)(8) prohibits a Chapter 7 debtor receiving another discharge in a Chapter 7 case if less than six years has transpired between petition dates. It does not prohibit filing a Chapter 7 petition before six years have elapsed.

Although some courts have held that there is a general prohibition against a debtor maintaining two chapter cases at the same time, the underlying rationale usually is that the two cases would entail the same debtor and the same debts. *See, eg., In re Wead*, 38 B.R. 658, 659 (Bankr.E.D.Mo.1984) (citing *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) and *Prudential Ins. Co. of America v. Colony Square*, 29 B.R. 432, 436 (W.D.Penn. 1983)). *But see, eg., In re Saylors*, 869 F.2d 1434 (11th Cir.1989) (debtor was not prohibited from filing Chapter 13 petition to cure arrearages on mortgage debt that had been discharged in Chapter 7 case even though the Chapter 7 case was open pending the filing of the final report).

Douglas J. Reed, Des Moines, Iowa, for debtor.

Robert D. Taha, Des Moines, Iowa, Trustee.

## MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Chief Judge.

On January 4, 1990 an evidentiary hearing was held on the Chapter 7 trustee's objection to Rita Bartlett's claim of exemption in a pension plan. Robert D. Taha, the trustee, represented himself. Douglas J. Reed appeared on behalf of the debtors. The matter was considered fully submitted at the close of the hearing.

### STATEMENT OF THE FACTS

1. On August 23, 1989 the debtors filed a petition for relief under Chapter 7. They resided in Iowa for more than 180 days immediately preceding that date.

2. On Schedule B–4, Rita Bartlett claimed her interest in "Foods, Inc. ESOP" exempt pursuant to Iowa Code section 627.-6.

3. On September 28, 1989 the trustee filed his objection to the exemption claim.

4. On November 14, 1989 the court conducted a telephonic hearing on the objection. At that time it was determined that an evidentiary hearing was necessary.

5. Rita Bartlett has been employed by Dahl's Food Marts for 12 years. As of the petition date, she was fully vested in excess of $40,000.00 in the ERISA qualified employee stock ownership plan. Banker's Trust Company of Des Moines serves as the trustee of the plan.

6. The employer funds the plan. Employees are not permitted to make contributions to the plan.

7. Rita Bartlett will receive or begin to receive the amount credited to her account upon retirement or disability. Provision is also made for death benefits.

8. If her employment terminates for any reason other than those set forth in the preceding paragraph, she will receive her vested portion no later than the plan year in which she reaches age 62. An advisory committee consisting of three employees appointed by the employer may decide to make an early distribution to her but can do so only with her permission. In the event of termination, her vested account would be segregated from the general fund and separately invested in federally insured deposits.

9. Rita Bartlett can neither assign nor transfer her right to benefits and no creditor can attach or levy the benefits held in trust. She can not borrow against her account. The only intrusion into vested benefits is that required by law for domestic relations orders.

10. Rita Bartlett had not terminated her employment and was not eligible for retirement at the time the petition was filed.

11. Rita Bartlett is 37 years old and in good health. Her job appears to be secure. Her debtor spouse is employed and in good health. They have a nine year old son who also is in good health. In addition to the

pension plan, they have claimed property in excess of $57,000 exempt under Iowa's general exemption statute. That amount includes their homestead.

## STATEMENT OF THE ISSUES

1. Is the debtors' interest in the pension plan property of the estate as contemplated by 11 U.S.C. section 541(a)(1) or is it otherwise excluded by operation of 11 U.S.C. section 541(c)(2)?

2. If the debtors' interest is not excluded from the property of the estate, is it exempt from the estate pursuant to 11 U.S.C. section 522(b)(2)(A)?

   a. Is the debtors' interest exempt under Federal law other than 11 U.S.C. section 522(d)?

   b. Is the debtors' interest exempt under the State or local law of the debtors' domicile that is applicable on the date of filing?

     (1) Is the State law which provides for general personal exemptions preempted by ERISA section 514(a)? (a) If the State law is not preempted, have the debtors established that their rights in a payment under the plan are reasonably necessary for their support or that of any of their dependents as required by Iowa Code section 627.-6(8)(e)?

3. If the debtors' interest in the plan is not exempt from the estate, what can the trustee recover for the benefit of the general unsecured creditors?

## DISCUSSION

### I. GENERAL OBSERVATIONS

Prior to late 1989 this court heard relatively few objections to retirement fund exemptions. Most that were filed focused not on whether the property should have been excluded from the estate pursuant to section 11 U.S.C. section 541(c)(2)[1] but on

---

**1.** This court is aware of only two decisions in which it discussed whether a particular trust arrangement was self-settled and, therefore, not excluded from the bankruptcy estate. Neither decision was submitted for formal publication but both are contained in the court's official

decision books maintained at the three court locations in this district. In the decision cited by the trustee in support of his argument, the debtor had agreed to release all claims against certain defendants in a civil action in exchange for a sum of money that then was transferred

whether the property was reasonably necessary for the support of the debtor or a dependent of the debtor and, therefore, exempt from the estate by operation of Iowa Code section 627.6(8)(e).

Then *In re Swanson*, 873 F.2d 1121 (8th Cir.1989), was filed. In that decision, the Eighth Circuit Court of Appeals held that the debtors' interest in a Teachers Retirement Fund created by the State of Minnesota was property of the estate even though some characteristics of a spendthrift trust were present. Similar to the interests of the debtors in three of the four cases filed today,[2] the debtors in *Swanson* made mandatory contributions to the fund and could reach those contributions plus accumulated interest upon termination of employment. After generally observing that Minnesota spendthrift trust law was less than specific, the appellate court determined that the contributions (even though involuntary) and the potential control over the fund (even though terminating employment technically was necessary) outweighed both the fact that the fund could not be assigned and the fact that the creditors could not levy against it. *Id.* at 1123–24.

After the *Swanson* decision was published, some of the Chapter 7 trustees for this district began filing more objections to retirement plan exemptions and to both employer and employee contributions.[3] Debtors and, in one case, counsel for a public retirement system have responded by urging this court to distinguish *Swanson* and

In re Graham*, 726 F.2d 1268 (8th Cir.1984) and to find that the plans in issue actually constitute spendthrift trusts under state law and, accordingly, the debtors' interests in those plans are excluded from the estates. In *Graham* the appellate court affirmed the determination by the bankruptcy court for the Northern District of Iowa that the debtor was required to turn over his ERISA trust funds to the bankruptcy trustee.

Certainly, this bankruptcy court must follow the controlling case law of the Eighth Circuit Court of Appeals. Mindful that appellate courts generally avoid determining more than the facts and the applicable law in a particular case warrant, this court concludes that the general holdings in the *Swanson* and the *Graham* decisions must be applied in a manner that is consistent with and limited to the specific facts of those cases. Indeed, to do otherwise would work inequities in the four cases under consideration.

Hence, this court will avail itself of what might be deemed by some to be a convenient point of distinction with respect to the *Swanson* decision. That is, the *Swanson* opinion reviews the exclusion issue under Minnesota spendthrift trust law. By contrast, this court must analyze facts somewhat similar to those in *Swanson* under Iowa law in two of the cases and under Nebraska law in the other two cases. *In re Graham*, 24 B.R. 305, 310 n. 4 (Bankr.N.

---

by the defendants' insurer to a bank that acted as a trustee of the trust fund for the benefit of the debtor and her son. Since the debtor gave consideration for the creation of a trust of which she was a beneficiary, the trust was held to be self-settled. That conclusion clearly rested on the specific facts of the case. In the other decision, the debtor made voluntary contributions to an ERISA qualified plan even after leaving his employment with the public university employer. The determination that the property in issue was not a spendthrift trust appears to be based on a general reading of circuit case law and, at best, upon an implicit analysis of the facts under Iowa spendthrift trust law; however, the court would have reached the same conclusion if the applicable nonbankruptcy law had been properly reviewed and discussed in the decision.

**2.** The companion cases decided today include *Matter of Carver*, 116 B.R. 985 (Bankr.S.D.Iowa 1990), *Matter of Gouker*, 116 B.R. 1005 (Bankr. S.D.Iowa 1990) and *Matter of Layton*, 116 B.R. 995 (Bankr.S.D.Iowa 1990).

**3.** Although the statement of the issue set forth in the appellate court decision indicates that both the employer and the employee contributions were the object of the trustee's turnover action, the district court's published opinion stated that only the employee contributions were in issue. *Compare In re Swanson*, 873 F.2d 1121, 1122 (8th Cir.1989) *with Matter of Swanson*, 79 B.R. 422, 423 (D.Minn.1987). The bankruptcy court's decision was not published.

D.Iowa 1982). The point of distinction will be one that yields a difference.

Then, it must be remembered that the *Graham* conclusions that only a "traditional" spendthrift trust can be *excluded* from the property of the estate and that a pension plan may only be *exempted* from the estate flowed from findings that the debtor was the sole stockholder, director and officer of the corporation, which contributed approximately $150,000.00 to his fully vested pension plan, and that he had resigned on the date the petition in bankruptcy was filed. That latter fact meant that the debtor could reach the funds under the terms of the plan. In turn, that meant the bankruptcy trustee could recover the funds unless the court held that the spendthrift provisions of the pension plan excluded the debtor's beneficial interest from the estate[4] or that the debtor could exempt that interest from the estate.[5]

At this juncture, the court observes that its resolution of the exclusion issue will dispose of three of the four cases under consideration. If the court were to construe Iowa spendthrift trust law as being less than specific and to assess the facts in a manner consistent with the way in which the *Swanson* court interpreted the facts under Minnesota law, none of the cases would be so resolved. Nevertheless, this court also will address, in the alternative, the remaining issues in an effort to emphasize the structural integrity of the Code vis-a-vis other federal and state law.

## II. PROPERTY EXCLUDABLE FROM THE BANKRUPTCY ESTATE

■ The first question that must be addressed in all of the cases under consideration is whether the debtors' interest in the retirement fund in issue remains property of the estate or is excluded from the estate. 11 U.S.C. section 541(a)(1) provides that the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" except as provided in subsequent subsections. Even exempt property is included initially in the estate. *In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984).

11 U.S.C. section 541(c)(1)(A) generally invalidates any restrictions on assignment or alienation of a debtor's interest in property. It applies to anti-alienation clauses required by the Employee Retirement Income Security Act of 1974 (ERISA). *Id.* at 1273. Then section 541(c)(1)(A) is modified by 11 U.S.C. section 541(c)(2) which states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." That qualification recognizes that the bankruptcy trustee would not be able to defeat a restriction on the transfer of a beneficial interest to the extent the restriction would be enforceable under state law as of the petition date. Only to the extent there would be no restriction would the beneficial interest be property of the estate and, if not exempt, subject to turnover. *Cf. In re Schauer*, 835 F.2d 1222, 1225 (8th Cir.1987) (reviewing a number of case authorities supporting "the general principle that the trustee takes only those rights that the debtor had under state law".)

The court must analyze the spendthrift provisions under Iowa law. The record does not indicate that any other law would govern this plan. *See In re Montgomery*, 104 B.R. 112, 115 (Bankr.N.D.Iowa 1989)

---

**4.** The appellate opinion addresses only issues of law with respect to the exclusion provision in the Bankruptcy Code. Apparently on appeal the parties did not challenge the bankruptcy court's findings of fact and conclusion of law that the debtor's pension plan was not a spendthrift trust under Iowa law. *Compare In re Graham*, 726 F.2d 1268, 1270–71 *with In re Graham*, 24 B.R. 305, 310–11 (Bankr.N.D.Iowa 1982).

**5.** Both the appellate court and the bankruptcy court address only an issue of law with respect

to the exemption provisions in the Bankruptcy Code. *Graham*, 726 F.2d at 1273–74 and *Graham*, 24 B.R. at 311–12. It should be noted that the debtor in the *Graham* case filed his petition on April 24, 1981. Iowa Code section 627.6, which enumerates the personal exemptions an Iowa resident may claim, did not allow any exemption for an interest in a retirement fund until July 1, 1981. Acts 1981 (69 G.A.) ch. 182, § 3.

(New York law governed plan of Iowa debtor). Iowa law generally recognizes and upholds the validity of spendthrift trusts. *Matter of Estate of Dodge,* 281 N.W.2d 447, 450 (Iowa 1979). "Spendthrift trusts are trusts created to maintain a designated beneficiary and to insulate the fund from claims of the beneficiary's creditors." *In re Schwartz,* 58 B.R. 606, 607 (Bankr.N.D.Iowa 1984) (citing *In re Graham,* 24 B.R. 305, 310 (Bankr.N.D.Iowa 1982)). "Generally, a settlor cannot make a spendthrift trust for his own benefit." *Schwartz,* 58 B.R. at 607 (referencing *DeRousse v. Williams,* 181 Iowa 379, 389, 164 N.W. 896, 899 (1917); *Harrison v. City National Bank of Clinton Iowa,* 210 F.Supp. 362, 370 (S.D.Iowa 1962); Restatement (Second) of Trusts section 156). The beneficial interest remains beyond the reach of the beneficiary's creditors as long as the plan trustee is not presently obligated to transfer the funds to the beneficiary. *In re Arney,* 35 B.R. 668, 671–72 (Bankr.N.D.Ill.1983), (citing *Darling v. Dodge,* 200 Iowa 1303, 206 N.W. 266, 267 (1925)).

The late Honorable William W. Thinnes, U.S. Bankruptcy Judge for the Northern District of Iowa, authored the *Graham* and *Schwartz* opinions cited in the preceding paragraph. In *Graham* he held that the ERISA fund in issue was not a spendthrift trust and, therefore, the debtor's interest in it was not excluded from the bankruptcy estate by operation of section 541(c)(2). In *Schwartz* he reached the same conclusion with respect to the debtor's interest in an Individual Retirement Account (IRA). In both cases he applied Iowa spendthrift trust law to the facts presented. In each case, his finding of fact that the debtor was the sole settlor and the sole beneficiary ultimately controlled his conclusion of law that the debtor's beneficial interest was not excludable from the estate by operation of the spendthrift provisions contained in the retirement plan.

■ In this case, Rita Bartlett is not a settlor but only a beneficiary under the plan. She makes no contributions to the plan. Her interest in the retirement account is not the result of any voluntary action on her part.[6] Additionally Rita Bartlett exercises virtually no control over the plan. As of the petition date, she had no immediate right to demand any distribution of her interest. Even if she had been terminated from her employment, Rita Bartlett would not have been entitled to receive any distribution before age 62 unless the advisory committee decided to make an early disbursement. Although her consent to such action would be required, it does not equate with any meaningful control. Moreover, her vested account is included in a pool of monies which the trustee of the plan manages and invests for the benefit of all the plan participants. Her vested interest will not be segregated from the general fund unless her employment is terminated.

Based on the foregoing facts, this court concludes that this ERISA qualified plan constitutes a spendthrift trust under Iowa law. The general restrictions on alienation are designed to protect the integrity of the profit sharing plan established by the employer. The fact that the plan's spendthrift provisions make a limited exception for domestic relations orders, as required by federal law, does not defeat the plan's status as a spendthrift trust under Iowa law. *See Estate of Dodge,* 281 N.W.2d at 450–51 (clarifying that general rejection of *Restatement (Second) of Trusts § 157* was not intended to prohibit invasion of the trust by certain creditors if the settlor provided for it in the trust instrument). *But see Swanson,* 79 B.R. at 425 (the fact that the trust was not immune from child support or alimony orders was held to be inconsistent with Minnesota spendthrift trust law).

Accordingly, Rita Bartlett's interest in Foods, Inc. ESOP is excluded from the bankruptcy estate by operation of section 541(c)(2). To hold otherwise would "defeat the legitimate expectations of the settlor of the trust". *Graham,* 726 F.2d at 1272

---

**6.** Any argument equating the mere seeking and maintaining of employment similar to that in this case with creating or giving consideration to a trust is strained at best. The trustee's reliance on the first case discussed in footnote 1 is misplaced.

(quoting from H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6136). *See generally In re Colsden,* 105 B.R. 500, 501–02 (N.D.Iowa 1988) (observing that the Eighth Circuit *Graham* decision did not analyze whether the profit-sharing plan under consideration was a spendthrift trust under state law and implying that a functional analysis might miss a distinction between a genuinely excludable spendthrift trust arrangement and a nonexcludable generic self-settled and revocable plan).[7]

### III. PROPERTY EXEMPT FROM THE ESTATE—THE ALTERNATIVE ANALYSIS

Had this court concluded that the property in issue was not excluded from the bankruptcy estate, it would have been required to address whether Rita Bartlett could exempt that property from the estate. As explained earlier, the court will provide the alternative analysis.

The discussion begins with a review of 11 U.S.C. section 522(b) which provides in relevant part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection

specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition ...

As permitted by section 522(b)(1), Iowa opted out of the federal exemptions set forth in 11 U.S.C. section 522(d) by operation of Iowa Code section 627.10.[8] Like the debtors in the other cases decided today, Rita Bartlett resided in Iowa for more than 180 days immediately preceding the petition date. Accordingly, she may exempt the property in issue to the extent permitted, if at all, under Federal law other than section 11 U.S.C. 522(d) or under Iowa or local law.

■ With respect to the exemption options under Federal law, the Eighth Circuit Court of Appeals made it very clear that any prohibition on assignment or alienation pursuant to 29 U.S.C. section 1056(d) (ERISA) or 26 U.S.C. section 401(a) (IRS) did not constitute a federal exemption under section 522(b)(2)(A). *Graham,* 726 F.2d at 1273–74. Hence, Rita Bartlett can not exempt her retirement account under a section 522(b)(2)(A) federal exemption because the profit sharing plan is a qualified ERISA plan. Although the *Graham* decision previously found that ERISA plans could be exempt under section 522(d)(10)(E),[9] Rita Bartlett can not utilize

---

**7.** The lower courts in the Eighth Circuit have analyzed the exclusion issue in various ways. *In re Boon,* 108 B.R. 697, 702–03 (W.D.Mo.1989). In the *Boon* decision, the district court held that the profit-sharing plan in issue was a spendthrift trust and, accordingly, reversed the bankruptcy court's order directing the debtors to turn over their interest in the plan to the bankruptcy trustee. The district court engaged in an exhaustive review of the relevant case law that has developed since the *Graham* decision was rendered and concluded that "the most narrow, and safest, reading of the Eighth Circuit's opinion in *Graham* is that ERISA pension plans may not be excluded under section 541(c)(2) merely because they are ERISA pension plans" and "ERISA plans may be excluded from the

bankruptcy estate under section 541(c)(2) if, and only if, they qualify as an enforceable spendthrift trust under applicable state law". *Id.* at 702 and 706.

**8.** Iowa Code section 627.10 states:

A debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. sec. 522(d) (1979). This section is enacted for the purpose set forth in 11 U.S.C. sec. 522(b)(1) (1979).

Acts 1981 (69 G.A.) ch. 182, § 2.

**9.** 11 U.S.C. section 522(d)(10)(E) provides:

that provision because Iowa has opted out of the federal exemption scheme.

Accordingly, the court must now determine whether the retirement account in this case is exempt under Iowa law. Unlike *Matter of Carver,* 116 B.R. at 992–95 (Bankr.S.D.Iowa 1990), there is no specific exemption under state or local law. The analysis in this case is limited to a review under Iowa Code Chapter 627, which is a general exemptions statute. As in *Matter of Gouker,* 116 B.R. at 1013–15 (Bankr.S.D.Iowa 1990) and *Matter of Layton,* 116 B.R. at 1003–04 (Bankr.S.D.Iowa 1990), the court must determine whether ERISA section 514(a), as codified at 29 U.S.C. section 1144(a),[10] preempts Iowa Code section 627.-6(8)(e), which provides:

A debtor who is a resident of this state may hold exempt from execution the following property:

. . . . .

8. The debtor's rights in:

. . . . .

e. A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

■ ERISA section 514(a) preempts any and all state laws that make reference to ERISA plans even when those state laws are consistent with the federal statutory scheme. *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988).

(Georgia statute which provided treatment for ERISA employee welfare benefit plans that was different from that provided for non-ERISA plans was preempted by ERISA). *Cf. Baxter By And Through Baxter v. Lynn,* 886 F.2d 182 (8th Cir.1989) (ERISA preempted any state statute or common law which restricts a plan's right of subrogation); *Davis v. Ottumwa YMCA,* 438 N.W.2d 10, 12–13 (Iowa 1989) (ERISA preempted claims based on state statutes that related to an employee benefit plan and did not fall within any of the preemption exceptions). *See also Bricker v. Maytag Co.,* 450 N.W.2d 839, 841–42 (Iowa 1990) (ERISA did not preempt indirect action by former employees against former employer).

Many district and bankruptcy court decisions regarding exemption issues pertaining to retirement plans discuss the *Mackey* decision. At this point in time the majority appear to hold that ERISA section 514(a) preempts both specific exemptions in state laws creating and governing plans and also personal exemptions in general exemption statutes. *See In re Conroy,* 110 B.R. 492 (Bankr.D.Mont.1990) (finding opt-out state's general exemption statute preempted as to ERISA plans and citing numerous cases finding both specific and general state exemption statutes preempted). *See also In re Gaines,* 106 B.R. 1008 (Bankr.W.D.Mo.1989) (opt-out state's general exemption statute preempted to the extent that it relates to ERISA); *In re Bryant,* 106 B.R. 727 (Bankr.M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA referenc-

(d) The following property may be exempted under subsection (b)(1) of this section:

. . . . .

(10) The debtor's right to receive—

. . . . .

(E) A payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and
(iii) such plan or contract *does not qualify* under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 USC 401(a), 403(a), 403(b), 408, or 409).

**10.** 29 U.S.C. section 1144(a) provides:

Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

es); *In re Sheppard,* 106 B.R. 724 (Bankr. M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Weeks,* 106 B.R. 257 (Bankr.E.D.Okla.1989) (opt-out state's general exemption statute referring to ERISA plans only was preempted); and *In re Flindall,* 105 B.R. 32 (Bankr.D.Ariz.1989) (opt-out state's general exemption statute allowing ERISA plan exemption was preempted). *But see In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex. 1989) (state exemption statute was not preempted as it was not "related to" ERISA within the meaning of 29 U.S.C. section 1144(a)); *In re Bryan,* 106 B.R. 749 (Bankr.S.D.Fla.1989) (state exemption statute not preempted, adopting *Volpe* analysis); *In re Martinez,* 107 B.R. 378 (Bankr. S.D.Fla.1989) (opt-out state's exemption clause allowing exemption of ERISA plans was not preempted as it was not in conflict with federal law); and *In re Seilkop,* 107 B.R. 776 (Bankr.S.D.Fla.1989) (opt-out state's exemption statute not preempted, adopting *Martinez* analysis).

■ Although this court seriously questions whether ERISA section 514(a) or the *Mackey* decision mandates a conclusion that a general exemption statute's reference to ERISA plans in an opt-out state results in the preemption of the state provision,[11] the resolution of the preemption issue raised by the trustee does not require a lengthy analysis. That is, Iowa Code section 627.6(8)(e) is generic on its face. It can not be construed as making any reference to ERISA or to attendant IRS provisions. Thus, it is not preempted by ERISA section 514(a).

■ Accordingly, the next step in this alternative analysis is to determine the extent to which Rita Bartlett's interest in the plan is reasonably necessary for her support or that of any of her dependents. The facts indicate that Rita Bartlett is relatively young and continues to be employed by Dahl's Food Marts, meaning that she should be able to re-establish her interest in the plan. The record does not suggest that Rita Bartlett and her family are facing any unusual expenses or that the existing income and exempt property would not cover their basic needs. Thus, Rita Bartlett would not be entitled to exempt any portion of her interest in the plan under section 627.6(8)(e).

Next, the trustee would step into the figurative shoes of Rita Bartlett to pursue the property in issue. He would be required to file a complaint against the plan administrators seeking a turnover of the property pursuant to 11 U.S.C. section 542 and Bankruptcy Rule 7001(1). Assuming that Rita Bartlett did not become disabled or die in the near future, he would have a long wait.[12] Even if she terminated her

---

**11.** The very language of ERISA section 514(a) focuses on "state laws insofar as they may now or hereafter relate to any employee benefit *plan*". 29 U.S.C. 1144(a) (emphasis added). Most general exemption statutes are not intended to impact on any plan but only on an individual's interest in a plan as of the petition date.

11 U.S.C. section 522(d)(10)(E) permits a debtor to exempt a right to receive a payment under a pension plan to the extent it is reasonably necessary for support. 11 U.S.C. section 522(b) sanctions state exemption systems. At a minimum, a state exemption that does not go beyond the bounds of the federal provision should be reconciled with the Congressional policy underlying ERISA section 514(a) and allowed to remain in full force and effect as is the federal exemption. To do otherwise penalizes debtors in opt-out states even when the state exemption language mirrors the federal provision. "The question of whether state law is preempted by federal law is one of Congressional intent. 'The purpose of Congress is the ultimate touchtone

[sic].'". *In re Laxson,* 102 B.R. 85, 87 (Bankr.N. D.Tex.1989) (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985)). *See generally Carver,* 116 B.R. at 993 n. 16 (discussing the interaction between codified federal law and statutory state law on the somewhat less than level playing field established by the United States Constitution).

**12.** Ironically, if Rita Bartlett died or became disabled, her dependents in the first instance and she in the second situation would more likely than not need the funds for support; however, the "reasonably necessary for support" test is assessed as of the petition date. Parenthetically, it should be noted that converting the Chapter 7 case to another chapter case would not change the determinative date. *See* 11 U.S.C. section 348(a) (conversion does not effect change in date of filing petition). *Cf. Matter of Brownlee,* 93 B.R. 662, 664–65 (Bankr.S.D.Iowa 1988) (discussing treatment of exemption date

employment, the case could be open for 25 years unless the advisory committee decided to make an early distribution.[13] *Cf. In re Schauer*, 835 F.2d 1222, 1227 (8th Cir. 1987) (recognizing that certain action taken by trustee based upon the rights a debtor has may result in considerable delay in the administration of the estate and in the closing of the case). The ultimate merits of pursuing this action are dubious at best—especially if it is remembered that a debtor may find it necessary to seek bankruptcy relief as a result of new debt in the long interim.[14]

## CONCLUSION

WHEREFORE, based on the foregoing analysis of the facts and the law, the court

finds that Foods, Inc. ESOP constitutes a spendthrift trust under Iowa law and, accordingly, concludes that Rita Bartlett's interest in the profit-sharing plan is excluded from the bankruptcy estate by operation of 11 U.S.C. 541(c)(2).

## ORDER

THEREFORE, the trustee's objection to exemption is overruled. Signed and filed this 29th day of May, 1990.

issues by the Eighth Circuit Court of Appeals in the context of Chapter 13 cases being converted to Chapter 7 cases).

13. Requiring the trustee to wait years to complete the administration of the estate would seem to be at odds with 11 U.S.C. section 554(a), which provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate". Consideration of both the expense and inconvenience associated with the administration of the estate and also the discounted value of the funds at the time they would be turned over to the trustee probably would justify an order granting abandonment—even over the unlikely objection of a general creditor who would be willing to keep its own records open for years pending a distribution by the trustee.

14. The only statutory limitations are those found in 11 U.S.C. section 109 which defines who may be a debtor under the various chapters. 11 U.S.C. section 727(a)(8) prohibits a Chapter 7 debtor receiving another discharge in a Chapter 7 case if less than six years has transpired between petition dates. It does not prohibit filing a Chapter 7 petition before six years have elapsed.

Although some courts have held that there is a general prohibition against a debtor maintaining two chapter cases at the same time, the underlying rationale usually is that the two cases would entail the same debtor and the same debts. *See, eg., In re Wead*, 38 B.R. 658, 659 (Bankr.E.D.Mo.1984) (citing *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) and *Prudential Ins. Co. of America v. Colony Square*, 29 B.R. 432, 436 (W.D.Penn. 1983)). *But see, eg., In re Saylors*, 869 F.2d 1434 (11th Cir.1989) (debtor was not prohibited from filing Chapter 13 petition to cure arrearages on mortgage debt that had been discharged in Chapter 7 case even though the Chapter 7 case was open pending the filing of the final report).