**In the Matter of Richard Dean CARVER, Pamela Anne Carver, Debtors.**

**Bankruptcy No. 89-01510-W J.**

United States Bankruptcy Court, S.D. Iowa.

May 29, 1990.

Clarence B. Meldrum, Jr., Council Bluffs, Iowa, for debtors.

C.R. Hannan, Council Bluffs, Iowa, trustee.

Linda G. Hanson, Des Moines, Iowa, for IPERS.

MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Chief Judge.

On November 14, 1989 a telephonic hearing was held on the Chapter 7 trustee's

objection to the debtors' claim of exemption in a retirement account and on his application for turnover of that property. C.R. Hannan, the trustee, represented himself. Clarence B. Meldrum, Jr., appeared on behalf of the debtors. Linda G. Hanson appeared on behalf of the Iowa Public Employees' Retirement System and in the role of amicus curiae. At the conclusion of the hearing, the court directed the parties to file briefs on all legal issues for which the facts were undisputed. The matter was considered fully submitted on December 6, 1989 when the last brief was filed.

## STATEMENT OF THE FACTS

1. On July 10, 1989 the debtors filed a petition for relief under Chapter 7. They resided in Iowa for more than 180 days immediately preceding that date.

2. On Schedule B-4 as amended, Pamela Carver claimed her interest in a "retirement account with Iowa Public Employees Retirement System (IPERS)—estimated value of account $5,400.00" exempt pursuant to Iowa Code section 627.6(8)(e).[1]

3. On September 28, 1989 the trustee filed his objection to the exemption claim. On the same day the trustee filed an application against the debtors for turnover of the funds.

4. On October 18, 1989 the debtors filed a resistance to the trustee's objection to exemption and to his application for turnover. The debtors requested that the court defer ruling on the turnover issue until the objection to exemptions was resolved. They relied on the argument that the assets would not be property of the estate by operation of Iowa Code section 97B.39 or would be exempt from the estate by operation of that same section or section 627.6(8)(e).

5. Pamela Carver had been employed by Glenwood State Hospital and School since 1983. She was fully vested in IPERS. She was discharged from that employment shortly before filing the petition

for relief under Chapter 7. She is contesting the discharge.

6. IPERS is governed by Chapter 97B of the Iowa Code. Every IPERS employee is required to contribute 3.7% of covered wages until termination or retirement, whichever occurs first. Every IPERS employer contributes 5.75% of the covered wages.

7. If an IPERS employee is terminated from employment prior to retirement, that employee is entitled to receive his or her accumulated contributions plus interest. If that employee is vested, he or she may elect to leave the funds in the system in order to receive them at a later date in accordance with the retirement provisions in the statute. In the latter situation, the employee would also receive the employer contributions that were made during that employee's period of employment.

8. Iowa Code section 97B.39 provides that:

> The right of any person to any future payment under this chapter is not transferable or assignable, at law or in equity, and the moneys paid or payable or rights existing under this chapter are not subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

## STATEMENT OF THE ISSUES

1. Is the debtors' interest in the pension plan property of the estate as contemplated by 11 U.S.C. section 541(a)(1) or is it otherwise excluded by operation of 11 U.S.C. section 541(c)(2)?

2. If the debtors' interest is not excluded from the property of the estate, is it exempt from the estate pursuant to 11 U.S.C. section 522(b)(2)(A)?

    a. Is the debtors' interest exempt under Federal law other than 11 U.S.C. section 522(d)?

    b. Is the debtors' interest exempt under the State or local law of the debtors'

---

**1.** Although the debtors actually cited Iowa Code section 627.8, that reference appears to be in error because that provision applies only to United States government pension plans.

domicile that is applicable on the date of filing?

(1) Is the State or local law under which the plan is created and exempted in its entirety preempted by ERISA section 514(a)?

(2) Is the State law which provides for general personal exemptions preempted by ERISA section 514(a)?

(a) If the State law is not preempted, have the debtors established that their rights in a payment under the plan are reasonably necessary for their support or that of any of their dependents as required by Iowa Code section 627.6(8)(e)? [2]

3. If the debtors' interest in the plan is not exempt from the estate, what can the trustee recover for the benefit of the general unsecured creditors?

## DISCUSSION

### I. GENERAL OBSERVATIONS

Prior to late 1989 this court heard relatively few objections to retirement fund exemptions. Most that were filed focused not on whether the property should have been excluded from the estate pursuant to section 11 U.S.C. section 541(c)(2) [3] but on whether the property was reasonably necessary for the support of the debtor or a dependent of the debtor and, therefore, exempt from the estate by operation of Iowa Code section 627.6(8)(e).

Then *In re Swanson*, 873 F.2d 1121 (8th Cir.1989), was filed. In that decision, the Eighth Circuit Court of Appeals held that the debtors' interest in a Teachers Retirement Fund created by the State of Minnesota was property of the estate even though some characteristics of a spendthrift trust were present. Similar to the interests of the debtors in three of the four cases filed today,[4] the debtors in *Swanson* made mandatory contributions to the fund and could reach those contributions plus accumulated interest upon termination of employment. After generally observing that Minnesota spendthrift trust law was less than specific, the appellate court determined that the contributions (even though involuntary) and the potential control over the fund (even though terminating employment technically was necessary) outweighed both the fact that the fund could not be assigned and the fact that the credi-

---

**2.** The trustee also argues that Pamela Carver can not claim an exemption under Iowa's general exemption statute because the statutorily created retirement system is not a plan or contract that is similar to the type of pension or annuity contemplated by the Iowa legislature when enacting Iowa Code section 627.6(9)(e) (now section 627.6(8)(e)). The court does not find the trustee's argument persuasive. The general reasoning set forth by former Bankruptcy Judge Richard Stageman in *Matter of Pettit*, 55 B.R. 394, 397–98 (Bankr.S.D.Iowa 1985) in support of his conclusion that a profit-sharing plan was a similar plan or contract is equally valid with respect to the statutorily created plan in this case. *See also In re Hutton*, 893 F.2d 1010 (8th Cir.1990) (savings and investment plan provided by employer was "similar plan").

**3.** This court is aware of only two decisions in which it discussed whether a particular trust arrangement was self-settled and, therefore, not excluded from the bankruptcy estate. Neither decision was submitted for formal publication but both are contained in the court's official decision books maintained at the three court locations in this district. In the decision cited by the trustee in support of his argument, the debtor had agreed to release all claims against certain defendants in a civil action in exchange for a sum of money that then was transferred by the defendants' insurer to a bank that acted as a trustee of the trust fund for the benefit of the debtor and her son. Since the debtor gave consideration for the creation of a trust of which she was a beneficiary, the trust was held to be self-settled. That conclusion clearly rested on the specific facts of the case. In the other decision, the debtor made voluntary contributions to an ERISA qualified plan even after leaving his employment with the public university employer. The determination that the property in issue was not a spendthrift trust appears to be based on a general reading of circuit case law and, at best, upon an implicit analysis of the facts under Iowa spendthrift trust law; however, the court would have reached the same conclusion if the applicable nonbankruptcy law had been properly reviewed and discussed in the decision.

**4.** The companion cases decided today include *Matter of Bartlett*, 116 B.R. 1015 (Bankr.S.D. Iowa 1990), *Matter of Gouker*, 116 B.R. 1005 (Bankr.S.D.Iowa 1990) and *Matter of Layton*, 116 B.R. 995 (Bankr.S.D.Iowa 1990).

tors could not levy against it. *Id.* at 1123–24.

After the *Swanson* decision was published, some of the Chapter 7 trustees for this district began filing more objections to retirement plan exemptions and to both employer and employee contributions.[5] Debtors and, in this case, counsel for IPERS have responded by urging this court to distinguish *Swanson* and *In re Graham*, 726 F.2d 1268 (8th Cir.1984) and to find that the plans in issue actually constitute spendthrift trusts under state law and, accordingly, that the debtors' interests in those plans are excluded from the estates. In *Graham* the appellate court affirmed the determination by the bankruptcy court for the Northern District of Iowa that the debtor was required to turn over his ERISA trust funds to the bankruptcy trustee.

Certainly, this bankruptcy court must follow the controlling case law of the Eighth Circuit Court of Appeals. Mindful that appellate courts generally avoid determining more than the facts and the applicable law in a particular case warrant, this court concludes that the general holdings in the *Swanson* and the *Graham* decisions must be applied in a manner that is consistent with and limited to the specific facts of those cases. Indeed, to do otherwise would work inequities in the four cases under consideration.

Hence, this court will avail itself of what might be deemed by some to be a convenient point of distinction with respect to the *Swanson* decision. That is, the *Swanson* opinion reviews the exclusion issue under Minnesota spendthrift trust law. By contrast, this court must analyze facts somewhat similar to those in *Swanson* under Iowa law in two of the cases and under Nebraska law in the other two cases. *In re Graham*, 24 B.R. 305, 310 n. 4 (Bankr.N.D.Iowa 1982). *See also Swanson*, 873 F.2d at 1124 ("Nevertheless, we do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under section 541(c)(2)."). The point of distinction will be one that yields a difference.

Then, it must be remembered that the *Graham* conclusions that only a "traditional" spendthrift trust can be *excluded* from the property of the estate and that a pension plan may only be *exempted* from the estate flowed from findings that the debtor was the sole stockholder, director and officer of the corporation, which contributed approximately $150,000.00 to his fully vested pension plan, and that he had resigned on the date the petition in bankruptcy was filed. That latter fact meant that the debtor could reach the funds under the terms of the plan. In turn, that meant the bankruptcy trustee could recover the funds unless the court held that the spendthrift provisions of the pension plan excluded the debtor's beneficial interest from the estate[6] or that the debtor could exempt that interest from the estate.[7]

At this juncture, the court observes that its resolution of the exclusion issue will dispose of the other three cases under consideration. If the court were to construe Iowa spendthrift trust law as being less

---

**5.** Although the statement of the issue set forth in the appellate court decision indicates that both the employer and the employee contributions were the object of the trustee's turnover action, the district court's published opinion stated that only the employee contributions were in issue. *Compare In re Swanson*, 873 F.2d 1121, 1122 (8th Cir.1989) *with Matter of Swanson*, 79 B.R. 422, 423 (D.Minn.1987). The bankruptcy court's decision was not published.

**6.** The appellate opinion addresses only issues of law with respect to the exclusion provision in the Bankruptcy Code. Apparently on appeal the parties did not challenge the bankruptcy court's findings of fact and conclusion of law that the debtor's pension plan was not a spendthrift trust

under Iowa law. *Compare In re Graham*, 726 F.2d 1268, 1270–71 *with In re Graham*, 24 B.R. 305, 310–311 (Bankr.N.D.Iowa 1982).

**7.** Both the appellate court and the bankruptcy court address only an issue of law with respect to the exemption provisions in the Bankruptcy Code. *Graham*, 726 F.2d at 1273–74 and *Graham*, 24 B.R. at 311–12. It should be noted that the debtor in the *Graham* case filed his petition on April 24, 1981. Iowa Code section 627.6, which enumerates the personal exemptions an Iowa resident may claim, did not allow any exemption for an interest in a retirement fund until July 1, 1981. Acts 1981 (69 G.A.) ch. 182, § 3.

than specific and to assess the facts in a manner consistent with the way in which the *Swanson* court interpreted the facts under Minnesota law, none of the cases would be so resolved.

## II. PROPERTY EXCLUDABLE FROM THE BANKRUPTCY ESTATE

■ The first question that must be addressed in all of the cases under consideration is whether the debtors' interest in the retirement fund in issue remains property of the estate or is excluded from the estate. 11 U.S.C. section 541(a)(1) provides that the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" except as provided in subsequent subsections. Even exempt property is included initially in the estate. *In re Graham,* 726 F.2d 1268, 1271 (8th Cir.1984).

11 U.S.C. section 541(c)(1)(A) generally invalidates any restrictions on assignment or alienation of a debtor's interest in property. It applies to anti-alienation clauses required by the Employee Retirement Income Security Act of 1974 (ERISA). *Id.* at 1273. Then section 541(c)(1)(A) is modified by 11 U.S.C. section 541(c)(2) which states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." That qualification recognizes that the bankruptcy trustee would not be able to defeat a restriction on the transfer of a beneficial interest to the extent the restriction would be enforceable under state law as of the petition date. Only to the extent there would be no restriction would the beneficial interest be property of the estate and, if not exempt, subject to turnover. *Cf. In re Schauer,* 835 F.2d 1222, 1225 (8th Cir.1987) (reviewing a number of case authorities supporting "the general principle that the trustee takes only those rights that the debtor had under state law".)

The court must analyze the spendthrift provisions under Iowa law because IPERS is governed by Iowa law. *See In re Montgomery,* 104 B.R. 112, 115 (Bankr.N.D.

Iowa 1989) (New York law governed plan of Iowa debtor). Iowa law generally recognizes and upholds the validity of spendthrift trusts. *Matter of Estate of Dodge,* 281 N.W.2d 447, 450 (Iowa 1979). "Spendthrift trusts are trusts created to maintain a designated beneficiary and to insulate the fund from claims of the beneficiary's creditors." *In re Schwartz,* 58 B.R. 606, 607 (Bankr.N.D.Iowa 1984) (citing *In re Graham,* 24 B.R. 305, 310 (Bankr.N.D.Iowa 1982)). "Generally, a settlor cannot make a spendthrift trust for his own benefit." *Schwartz,* 58 B.R. at 607 (referencing *DeRousse v. Williams,* 181 Iowa 379, 389, 164 N.W. 896, 899 (1917); *Harrison v. City National Bank of Clinton, Iowa,* 210 F.Supp. 362, 370 (S.D.Iowa 1962); Restatement (Second) of Trusts section 156). The beneficial interest remains beyond the reach of the beneficiary's creditors as long as the plan trustee is not presently obligated to transfer the funds to the beneficiary. *In re Arney,* 35 B.R. 668, 671–72 (Bankr.N.D.Ill.1983), (citing *Darling v. Dodge,* 200 Iowa 1303, 206 N.W. 266, 267 (1925)).

The late Honorable William W. Thinnes, U.S. Bankruptcy Judge for the Northern District of Iowa, authored the *Graham* and *Schwartz* opinions cited in the preceding paragraph. In *Graham* he held that the ERISA fund in issue was not a spendthrift trust and, therefore, the debtor's interest in it was not excluded from the bankruptcy estate by operation of section 541(c)(2). In *Schwartz* he reached the same conclusion with respect to the debtor's interest in an Individual Retirement Account (IRA). In both cases he applied Iowa spendthrift trust law to the facts presented. In each case, his finding of fact that the debtor was the sole settlor and the sole beneficiary ultimately controlled his conclusion of law that the debtor's beneficial interest was not excludable from the estate by operation of the spendthrift provisions contained in the retirement plan.

■ In this case, Pamela Carver is not the sole settlor and the sole beneficiary with respect to IPERS. Her interest in a retirement account under IPERS is not the

result of her voluntary action.[8] Her mandatory contributions are of benefit to other IPERS employees. That is, as contemplated by Iowa Code section 97B.7 which pertains to the plan's creation and investments and the plan trustee's duties, the mandatory contributions made by the IPERS employees and matched by the IPERS employers form a pool of monies which the IPERS Administrator may manage and invest for the benefit of all participants. The restrictions found in Iowa Code section 97B.39 are designed to protect the integrity of the statutorily created retirement system.

Based on this statutory scheme, this court concludes that IPERS constitutes a spendthrift trust under Iowa law. It may not be a "traditional" spendthrift trust if the adjective refers only to stereotypes, such as the familiar family trust or an arrangement involving no overlapping of settlors and beneficiaries.[9] Yet, it certainly should be deemed a traditional spendthrift trust in theory and in practice because the state, as the ultimate settlor, has mandated a system for the general welfare of the state employees as a whole and has attempted to protect that retirement system from adverse action by beneficiaries and by creditors of the beneficiaries. To say the least, it certainly is not a traditional *non*spendthrift trust. To hold otherwise would "defeat the legitimate expectations of the settlor of the trust". *Graham*, 726 F.2d at 1272 (quoting from H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 6136). *See generally In re*

*Colsden*, 105 B.R. 500, 501–02 (N.D.Iowa 1988) (observing that the Eighth Circuit *Graham* decision did not analyze whether the profit-sharing plan under consideration was a spendthrift trust under state law and implying that a functional analysis might miss a distinction between a genuinely excludable spendthrift trust arrangement and a nonexcludable generic self-settled and revocable plan).[10]

It must be emphasized that the above conclusion does not mean that restrictions which are valid as to IPERS in general remain so with respect to the account of an IPERS employee if the circumstances on the petition date would negate the spendthrift provisions as to that account. In this case, Pamela Carver filed her bankruptcy petition at a time when she was discharged from her employment. This means that the trustee may reach the mandatory contributions and accumulated interest because the debtor may do so. That she is contesting the discharge is of no consequence. *Cf. Graham*, 24 B.R. at 313 (Graham's right to receive the benefits was fixed as of the date the petition was filed because he terminated his employment and could claim the funds as of that date even though he would not actually receive the funds until sixty days after the close of that plan year). Thus, the mandatory contributions and accumulated interest in her account are not excludable from the bankruptcy estate because the spendthrift provisions as to those contributions were not in full force and effect on the date the petition was filed.

8. Any argument equating the mere seeking and maintaining of employment similar to that in this case with creating or giving consideration to a trust is strained at best. The trustee's reliance on the first case discussed in footnote 3 is misplaced.

9. The court has been unable to find the specific term "traditional" used in conjunction with references to spendthrift trusts in the legislative history of section 541(c)(2).

10. The lower courts in the Eighth Circuit have analyzed the exclusion issue in various ways. *In re Boon*, 108 B.R. 697, 702–703 (W.D.Mo. 1989). In the *Boon* decision, the district court held that the profit-sharing plan in issue was a spendthrift trust and, accordingly, reversed the bankruptcy court's order directing the debtors to turn over their interest in the plan to the bankruptcy trustee. The district court engaged in an exhaustive review of the relevant case law that has developed since the *Graham* decision was rendered and concluded that "the most narrow, and safest, reading of the Eighth Circuit's opinion in *Graham* is that ERISA pension plans may not be excluded under section 541(c)(2) merely because they are ERISA pension plans" and "ERISA plans may be excluded from the bankruptcy estate under section 541(c)(2) if, and only if, they qualify as an enforceable spendthrift trust under applicable state law". *Id.* at 702 and 706.

## III. PROPERTY EXEMPT FROM THE BANKRUPTCY ESTATE

Given the court's preceding conclusion that Pamela Carver's beneficial interest in her mandatory contributions and the accumulated interest is not excluded from the estate, the next issue that must be addressed is whether she may exempt that property from the estate. The discussion begins with a review of 11 U.S.C. section 522(b) which provides in relevant part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition ...

As permitted by section 522(b)(1), Iowa opted out of the federal exemptions set forth in 11 U.S.C. section 522(d) by operation of Iowa Code section 627.10.[11] Like the debtors in the other cases decided today, Pamela Carver resided in Iowa for more than 180 days immediately preceding the petition date. Accordingly, she may exempt the property in issue to the extent permitted, if at all, under Federal law other than section 11 U.S.C. 522(d) or under Iowa or local law.

With respect to the exemption options under Federal law, the Eighth Circuit Court of Appeals made it very clear that any prohibition on assignment or alienation pursuant to 29 U.S.C. section 1056(d) (ERISA) or 26 U.S.C. section 401(a) (IRS) did not constitute a federal exemption under section 522(b)(2)(A). *Graham,* 726 F.2d at 1273–74. Then in *Swanson,* the appellate court made the following observations:

The debtors elected the federal exemptions which do not exempt retirement funds such as those involved in this case. The debtors' decisions seem to have been motivated by a belief that the retirement funds at issue would be excluded from their bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). In any event, it is clear that had the debtors selected the exemptions provided under Minnesota law the retirement funds in this case would have been exempt.

*Swanson,* 873 F.2d at 1122.

It must be remembered that the debtors in *Swanson* were free to choose either the section 522(d) exemptions pursuant to section 522(b)(1) or the section 522(b)(2)(A) federal exemptions (in addition to state and local exemptions) pursuant to section 522(b)(2) because Minnesota did not opt out of the federal exemption scheme. As the quote indicates, the debtors chose the first option, meaning they could not then claim the section 522(b)(2)(A) federal exemptions. Hence, the first sentence in the above quote does not appear to be relying upon the *Graham* holding that certain plans can not be exempted under section 522(b)(2)(A) but rather seems to be based on unstated findings that the plan in issue does not satisfy the requirements of section 522(d)(10)(E).[12] Additionally, since the

---

**11.** Iowa Code section 627.10 states:
A debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. sec. 522(d) (1979). This section is enacted for the purpose set forth in 11 U.S.C. sec. 522(b)(1) (1979).
Acts 1981 (69 G.A.) ch. 182, § 2.

**12.** 11 U.S.C. section 522(d)(10)(E) provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . . . .

(10) The debtor's right to receive—

. . . . .

(E) A payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the

*Graham* decision previously found that ERISA regulated private employer plans and that, like non–ERISA plans,[13] such plans could be exempt under section 522(d)(10)(E), it is reasonable to assume that the Eighth Circuit also concluded that the plan in *Swanson* was not an ERISA qualified plan. *Graham*, 726 F.2d at 1272 and 1274. A determination that the Minnesota Teachers Retirement Fund is not an ERISA qualified plan appears in any event to be consistent with the statutory framework of ERISA.[14]

■ Returning to the facts of this case, Pamela Carver can not exempt the IPERS retirement account under a section 522(b)(2)(A) federal exemption. IPERS is a creature of state law and as such is not similar to any of the property interests set forth in the legislative history of section 522(b)(2)(A). *See Graham*, 726 F.2d at 1274 ("The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government."). Since Iowa has opted out of the federal exemption scheme, the debtor can not utilize section 522(d)(10)(E).

Accordingly, the court must now determine whether the retirement account in this case is exempt under Iowa law. Notably, the analysis in this particular case is not limited to a review of Iowa Code Chapter 627, which is a general exemptions statute. The court first must determine whether Pamela Carver may utilize the specific exemption found in Iowa Code Chapter 97B, which creates and governs IPERS. To that end, the last sentence in the above quote from the *Swanson* decision requires at least a few paragraphs of review.

Although the appellate court indicates that the debtors could have exempted the retirement funds if they only had claimed their exemptions under Minnesota law rather than under the federal scheme of exemptions, it does not identify the state law. Indeed, if the debtors in the *Swanson* case had claimed their exemption under Minnesota's general exemptions statute, they would have been required to prove the extent to which the exemption was reasonably necessary for their support or the support of one of their dependents.[15] Since

debtor and any dependent of the debtor, unless—
    (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
    (ii) such payment is on account of age or length of service; and
    (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 USC 401(a), 403(a), 403(b), 408, or 409).

**13.** It might be argued that the Eighth Circuit Court of Appeals determined that a statutory retirement system is not a "similar plan or contract" under the federal exemption; however, such a conclusion appears to be at odds with its subsequent observation that "if § 541(c)(2) were construed to exclude retirement funds from the bankruptcy estate then the part of the Code which provides a limited federal exemption for these funds would be rendered meaningless". *Swanson*, 873 F.2d at 1124. *See supra* note 2 (the trustee did not rely upon the *Swanson* language).

**14.** The controlling ERISA provisions state in part:
    Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a).
    The provisions of this title shall not apply to any employee benefit plan if—
    (1) such plan is a governmental plan as defined in section 1002(32) of this title ...
29 U.S.C. § 1003(b).
    The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing ...
29 U.S.C. § 1002(32).

**15.** Minnesota Statutes section 550.37 is a general exemptions statute. Subdivision 1 provides that "[t]he property mentioned in this section is not liable to attachment, garnishment, or sale on any final process, issued from any court". Subdivision 24 makes reference to:
    The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, individual retirement annuity, simplified em-

no discussion of facts that would allow determination of such an issue appears in either the district court decision or in the appellate opinion, it is not likely that the last sentence of the quote on page 15 of this decision is referring to the general exemption statute.

■ This court must assume that the Eighth Circuit Court of Appeals concluded in *Swanson* that section 522(b)(2)(A) includes anti-alienation provisions in state or local statutes which create and govern retirement systems.[16] *See In re Olson,* 108 B.R. 232 (Bankr.W.D.Mo.1989) (debtors were allowed to exempt their interest in Missouri Public Retirement System under the specific exemption found in the statutory scheme governing the retirement system rather than under the general exemption statute, which would have required an additional determination regarding the extent to which the funds were reasonably

necessary for the support of the debtors or a dependent of the debtors). The appellate court's determination appears to accept that a state can enact—without violating the Supremacy Clause of the United States Constitution—an unlimited exemption in the governing statute which is significantly at odds with the Bankruptcy Code's emphasis on allowing a debtor to retain only as much as is necessary for a fresh start.[17] Also, with respect to the *Swanson* case, that determination must rest again upon the premise that ERISA does not apply to the Minnesota Teachers Retirement Fund and, accordingly, that the specific exemption provided in Minnesota Statutes section 354.10 does not relate to the employee benefit plan in the sense contemplated and prohibited by section 514(a) of ERISA. *See In re McKeag,* 104 B.R. 160, 162 n. 4 (Bankr.D.Minn.1989) (preemption of state law was not in issue because ERISA provi-

ployee pension, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

16. The anti-alienation statute in effect at the time the petition was filed in the *Swanson* case provided that:
The right of a teacher to avail himself of the benefits provided by this chapter, is a personal right only and shall not be assignable. All moneys to the credit of a teacher's account in the fund · . . . shall belong to the state of Minnesota until actually paid to the teacher or his beneficiary pursuant to the provisions of this chapter. Any power of attorney, assignment or attempted assignment of a teacher's interest in the fund, or of the beneficiary's interest therein, by a teacher or his beneficiary, including actions for divorce, legal separation, and child support, shall be null and void and the same shall be exempt from garnishment or levy under attachment or execution and from taxation under chapter 291.
*Swanson* 873 F.2d at 1122–23 (quoting Minnesota Statutes section 354.10 (1982)). The Minnesota Teachers Retirement Association had relied upon this provision in arguing that the property in issue was excluded by operation of section 541(c)(2). It should be noted that the debtors were not a party to the controversy between the bankruptcy trustee and the Association in the *Swanson* case.

17. Pursuant to Article I, section 8 of the United States Constitution, Congress has the power to enact the laws on bankruptcy. In accordance with Article VI, section 2 of the United States

Constitution, those bankruptcy laws are part of the supreme law of the land. Like Congress' expressed intent that applicable nonbankruptcy laws be considered with respect to an exclusion issue under section 541(c)(2), the legislative history for section 522(b) suggests that Congress intended that only *applicable* nonbankruptcy law be considered with respect to an exemption issue. "It [section 522(b) ] permits an individual debtor in a bankruptcy case a choice between *exemption systems.*" House Report No. 95–595, 95th Cong. 1st Sess. 360–1 (1977) 1978 U.S.Code Cong. & Admin.News 6316 (emphasis added). "It [section 522(b) ] permits *a debtor the exemptions to which he is entitled* under other Federal law and the law of the State of his domicile." Senate Report No. 95–989, 95th Cong. 2d Sess. 75 (1978), 1978 U.S.Code Cong. & Admin.News 5861 (emphasis added).

If a court in a state that has opted out of the federal exemption scheme considers more than the exemption system under state or local law (which would include general exemption statutes and those additional statutes specifically referring to an individual debtor's needs), allowed exemptions may far exceed those contemplated by Congress as being part of a state's exemption system. Indeed, this court respectfully suggests that concluding that a statute, which contains anti-alienation and specific exemption provisions, is not a justifiable basis for finding that a plan is a spendthrift trust (that the debtors' interest in the plan is excluded from the estate) but is a ground for allowing all of the interest in the plan to be exempted from the estate will yield inequitable results not intended by Congress.

sions did not apply to the governmental plan). *See generally Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (Georgia statute which provided treatment for ERISA employee welfare benefit plans that was different from that provided for non–ERISA plans was preempted by ERISA).[18] *Cf. Baxter By And Through Baxter v. Lynn,* 886 F.2d 182 (8th Cir.1989) (ERISA preempted any state statute or common law which restricts a plan's right of subrogation); *Davis v. Ottumwa YMCA,* 438 N.W.2d 10, 12–13 (Iowa 1989) (ERISA preempted claims based on state statutes that related to an employee benefit plan and did not fall within any of the preemption exceptions). *See also Bricker v. Maytag Co.,* 450 N.W.2d 839, 841–42 (Iowa 1990) (ERISA did not preempt indirect action by former employees against former employer).

**18.** ERISA section 514(a), as codified at 29 U.S.C. section 1144(a), preempts any and all state laws that make reference to ERISA plans even when those state laws are consistent with the federal statutory scheme. *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988).

Many district and bankruptcy court decisions regarding exemption issues pertaining to retirement plans discuss the *Mackey* decision. At this point in time, the majority appear to hold that ERISA section 514(a) preempts both specific exemptions in state laws creating and governing plans and also personal exemptions in general exemption statutes. *See In re Conroy,* 110 B.R. 492 (Bankr.D.Mont.1990) (finding opt-out state's general exemption statute preempted as to ERISA plans and citing numerous cases finding both specific and general state exemption statutes preempted). *See also In re Gaines,* 106 B.R. 1008 (Bankr.W.D.Mo.1989) (opt-out state's general exemption statute preempted to the extent that it relates to ERISA); *In re Bryant,* 106 B.R. 727 (Bankr.M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Sheppard,* 106 B.R. 724 (Bankr.M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Weeks,* 106 B.R. 257 (Bankr.E.D.Okla.1989) (opt-out state's general exemption statute referring to ERISA plans only was preempted); and *In re Flindall,* 105 B.R. 32 (Bankr.D.Ariz.1989) (opt-out state's general exemption statute allowing ERISA plan exemption was preempted). *But see, In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex.1989) (state exemption statute was not preempted as it was not "related to"

■ This court must follow the conclusion of law reached in the *Swanson* decision. That conclusion is not based on any factual point that can be distinguished in a valid manner. That is, even though the debtors in *Swanson* could not actually demand the funds as of the petition date but Pamela Carver could do so, the circuit court's holding with respect to exemption was focused on property that was not excluded from the estate. That is this court's focus at this point in the analysis.[19] Hence, the funds which Pamela Carver actually could obtain as of the petition date are exempt under Iowa Code section 97B.39. Unlike the alternative analyses in the three other cases decided today, the court need not consider whether those funds are reasonably necessary for Pamela Carver's support or the support of any of her dependents as would otherwise be required by Iowa's general exemption statute.[20] Likewise, a consideration of the

ERISA within the meaning of 29 U.S.C. section 1144(a)); *In re Bryan,* 106 B.R. 749 (Bankr.S.D.Fla.1989) (state exemption statute not preempted, adopting *Volpe* analysis); *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla.1989) (opt-out state's exemption clause allowing exemption of ERISA plans was not preempted as it was not in conflict with federal law); and *In re Seilkop,* 107 B.R. 776 (Bankr.S.D.Fla.1989) (opt-out state's exemption statute not preempted, adopting *Martinez* analysis).

**19.** The court appreciates that logic otherwise would suggest that Pamela Carver should not benefit from the *Swanson* conclusion of law that she may claim the specific exemption under IPERS rather than prove her exemption under Iowa's general exemption statute. That is, her ability to claim her contributions and accumulated interest as of the petition date, in essence, takes those funds out of the spendthrift trust and, concomitantly, beyond the protective parameters of the plan's spendthrift provisions.

**20.** The court recognizes the inequities that would result if the disposition in each of the three other cases decided today rested upon the alternative analysis rather than upon a conclusion that the property in issue is excluded from the estate. Pamela Carver not only can make a claim for her contributions and accumulated interest from the plan administrator as of the petition date but also can claim the funds exempt without satisfying the "reasonably necessary for support" standard in Iowa's general exemption statute. Yet, neither the debtor in the *Gouker* case nor in the *Layton* case may do

turnover issue is not necessary in this case.[21]

## CONCLUSION

WHEREFORE, based on the foregoing analysis of the facts and the law, the court finds that IPERS constitutes a spendthrift trust under Iowa law and, accordingly, concludes that IPERS is excluded from the bankruptcy estate by operation of 11 U.S.C. section 541(c)(2). The court further finds that when a debtor is able to reach that debtor's IPERS contributions and accumulated interest as of the petition date, those funds are deemed to be beyond the spendthrift provisions of the statutory trust and, accordingly, not excluded from the bankruptcy estate.

The court finds that the debtor in this case could reach her contributions and accumulated interest as of the petition date but that such property of the estate is exempt pursuant to Iowa Code section 97B.39, by operation of 11 U.S.C. section 522(b)(2)(A) and as implicitly interpreted by controlling circuit case law.

## ORDER

THEREFORE, the trustee's objection to exemption is overruled and his motion for turnover is denied.

---

so because the relevant specific exemption arises under state or local law which is not the law of their domiciles. The debtor in the *Bartlett* case does not have the benefit of any specific exemption statute because her interest is in an ERISA qualified profit-sharing plan. Hence, the other three debtors would be required to satisfy the "reasonably necessary for support" test. The debtors in the *Layton* and *Bartlett* cases would not meet that statutory requirement. Further evidence would be taken in the *Gouker* case.

**21.** Assuming for analysis purposes that Pamela Carver would not satisfy the general exemption standard if she were required to do so, a trustee could move for a turnover of the property from her by motion and with little delay in the administration of the estate. By contrast, the trustees in the other cases would be required to file complaints against the plan administrators seeking a turnover of the property of the estate pursuant to 11 U.S.C. section 542 and Bankruptcy Rule 7001(1). Since the debtors have no present right to demand any amount from the plan administrators, the ultimate merits of pursuing such actions are dubious at best. *Cf. In re Schauer*, 835 F.2d 1222, 1227 (8th Cir.1987) (recognizing that certain action taken by trustee based upon the rights a debtor has may result in considerable delay in the administration of the estate and in the closing of the case).